# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL A. ARCHER | No. 1:22-cr-00140-SDN |

## GOVERNMENT SENTENCING MEMORANDUM

NOW COMES the United States of America, by and through Andrew B. Benson, United States Attorney, and Andrew K. Lizotte, Assistant United States Attorney, and hereby submits this sentencing memorandum to assist the Court in its determination of an appropriate sentence.

## Introduction

Defendant perpetrated a sophisticated, lucrative, and audacious fraudulent scheme spanning more than a year and a half. He willfully evaded paying more than $1 million in federal income taxes from April 2018 through about November 2019. Defendant's tax evasion was both furthered by and evolved into the pants-on-fire fraudulent transfer and concealment scheme he executed on the U.S. Bankruptcy Court from March 2019 through November 2019. Taken in combination, the nature and circumstances of the offenses detailed in the revised Presentence Investigation Report ("PSR" ¶¶ 1-47, Dkt. #136, Aug. 18, 2025) calls for a significant sentence, in order to "reflect the seriousness of the offense[s], to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2).

1

**Issues Bearing on Sentencing**

According to the Plea Agreement filed in this matter (Dkt. #123 at 2, Apr. 8, 2025), the Government will recommend that the Court impose a sentence at the low end of the Guideline range as determined by the Court. The Government submits that a low-end Guideline sentence will be "sufficient, but not greater than necessary," to promote the purposes of sentencing. 18 U.S.C. § 3553(a). Based upon a total offense level of 19[1] and a criminal history category of I, the Guideline range for imprisonment should be calculated as 30 months to 37 months. The Government therefore intends to recommend a 30-month sentence, which will be subject to the time Defendant previously served while detained for violating his bail (September 12, 2023 through July 1, 2024). PSR ¶¶ 8-10. The Government addresses some of the salient issues bearing on sentencing in greater detail below.

1.  **Defendant is responsible for a $1MM tax loss.**

Probation has correctly determined that Defendant's tax evasion scheme resulted in a tax loss in excess of one million dollars. PSR. ¶ 53. Defendant's efforts to rewrite history through his recent submission of an "Expert[2] Opinion Report" should not be

---

[1] As previously argued by the Government, *see* Dkt. #144 at 4, the addition of a U.S.S.G § 2B1.1(b)(10)(C) sophisticated means enhancement for Defendant's bankruptcy fraud results in an Adjusted Offense Level of 18 (rather than 16) for Count 2. PSR ¶¶ 64, 65. Because "one additional unit is assigned for each group that is [] from 1 to 4 levels less serious," Count 2 qualifies as a whole—rather than a half—unit. *Id.* ¶ 65 (Count 1 Adjusted Offense Level of 22 would be within four levels of the updated Count 2 Adjusted Offense Level of 18). According to the U.S.S.G. § 3D1.4 Table, the two grouped units would increase the offense level by two, resulting in a combined offense level of 24 (*contra* PSR ¶ 68) and a Total Offense Level of 19 (*contra* PSR ¶ 72, listing a level 18).

[2] The Government is skeptical of this expert's expertise. The individual who prepared the report graduated law school in 2021 and was first admitted to the Maine Bar in April 2022. *See* State of Maine, Bd. of Overseers of the Bar Attorney Directory, *available at* https://apps.web.maine.gov/cgi-bin/online/maine_bar/attorney_directory_details.pl?bar_num=010190 (last visited Nov. 26, 2025). Also

taken seriously. *See* Dkt. #145-1. The "Expert Opinion Report" is facially conjectural, unsupported, and vague. Indeed, it is devoid of math, offering no actual recalculation of the purported lesser tax debt owed. The retrospective given by the "Expert Opinion Report" also ignores the reality of this case. Defendant was actively doing everything in his power—with great success—to obfuscate the IRS's ability to calculate his tax liabilities by reference to his profit margins, recordkeeping, and expenses. Indeed, the affirmative acts at the heart of the superseding indictment include this concealment of assets and income. *See* Dkt. #31 at 1, ¶¶ d, e.

     Despite the roadblocks created by Defendant, the IRS persevered in its auditing and assessment activities. The thoroughness and regularity of the agency's tax professionals is apparent from the face of their work product. *See* Gov't Ex. 1, IRS Deckert Initial Interview Questions and Notes. By contrast, Defendant's responses throughout the entirety of the process were consistently evasive and incomplete, including his provision of partial and redacted documentation. *See* Gov't Ex. 2, IRS Deckert Cleverbridge Records; Gov't Ex. 3, IRS Deckert BSB Records. Moreover, because Defendant failed to file his 2015 taxes, the IRS was required to prepare a Substitute for Return for that year. PSR ¶ 25. The final notice of deficiency issued to Defendant in 2017 rightly determined that he owed a total $1,033,259.29 tax debt for 2013, 2014, and 2015. *Id.*; Gov't Ex. 4, IRS Deckert Notice of Deficiency. These are the same sizeable tax debts established by Defendant's Certified Tax Transcripts. *See* Gov't Exs. 5-7.

---

unique is that the individual's "expert opinion" is that his own "[e]xpert testimony is essential to this case. . ." Dkt. #145-1 at 19.

In short, it was Defendant himself who impeded the IRS's ability to audit his "economic reality." Dkt. #145-1 at 19. The IRS reasonably and reliably audited and assessed Defendant's tax liabilities for 2013, 2014, and 2015. Defendant has done nothing to challenge those liabilities until now. His proffered "Expert Opinion Report" should be disregarded.

### 2. Defendant's concealment scheme was Internet-based.

Defendant's affiliate marketing businesses and use of cryptocurrency trading platforms and online payment systems arose from a concealment scheme that was Internet-based. The underlying offense conduct was, as the current phrase goes, "extremely online." This enabled Defendant's evasive conduct to flourish, as he conducted his business and personal financial affairs through the two online businesses Max Tune Up, LLC and Stealth Kit, LLC. *See* Gov't Ex. 8, Domains by Proxy Business Records. Defendant even went so far as to establish a "virtual office" for his business activities. *See* Gov't Ex. 9, Alliance Virtual Office Business Records. All the while, he relied on PayPal, cryptocurrency, and bank accounts held in the names of family and his companies to maintain his online operations and live a wealthy (and tax-free) lifestyle. *See* Gov't Exs. 10-13.

### 3. The fraud Defendant perpetrated on the Bankruptcy Court was unusual in its flagrancy.

Defendant's fraud on the Bankruptcy Court was a fraud on this Court. *See* D. ME. LOCAL R. 16.8(a) ("[a]ll cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to cases under Title 11 will be referred to the bankruptcy

judges of this District"). He appeared in this very Courthouse, repeatedly, and lied. PSR ¶¶42-43; *see also* Gov't Exs. 14-17 (complete transcripts of hearings and Bankruptcy Court appearances).

Defendant's dissembling was particularly pronounced in the *pro se* filings he submitted to the Bankruptcy Court. In those filings, while often playing the victim, Defendant also went on the attack. In his "Opposition to Trustee's Motion for Authority to Issue Subpoenas and Deliver Order to Compel the Productions of Documents," for example, Defendant faulted the Chapter 7 Trustee for engaging in a "misleading mischaracterization of [Defendant]" which was "far too expensive for the Bankrupt [Defendant] to comply with." PSR ¶ 44; Gov't Ex. 18 at 1-2 (accusing the Chapter 7 Trustee of "attempting to villainize [Defendant] in any way he can without merit which is undeniably unprofessional"). Defendant argued that the

> Trustee seems to believe Debtor is concealing assets though he has no foundation for such belief. Debtor is indeed bankrupt and has provided all evidence to support his claim. Trustee appears to be completely obsessed with proving Debtor is concealing assets. Trustee has been given documents and testimony that prove Debtor is in fact bankrupt but still seems to be on a mission to further the goals of the IRS which Debtor has filed bankruptcy because of.

Gov't Ex. 18 at 3.[3] In a different filing, Defendant accused the Chapter 7 Trustee of engaging in a "Witch Hunt," acting like "Dog The Bounty Hunter," and of "strutting his stuff." Gov't Ex. 20 at 3, Bankr. Pub. Rec. Dkt. 45 Debtor's Opp'n. This invective continued throughout the bankruptcy case, as displayed by Defendant's "Reply to

---

[3] Defendant similarly accused the Bankruptcy Court of issuing "contradictory orders," and urged the Bankruptcy Court to "honor its own rulings." *See* Gov't Ex. 19 at 2, Bankr. Pub. Rec. Dkt. 43 Debtor's Mot.

Trustee's Opposition to Motion/Request for this Court to Honor and Enforce its Previous Order on Enlargement of Time." PSR ¶ 45; Gov't Ex. 21. There, Defendant reiterated that he "gave his truthful testimony but only after making a **sworn oath to God Almighty.**" Gov't Ex. 21 at 2 (emphasis original). He derided the Chapter 7 Trustee as a "Tool" who was engaged in a "wild fantasy treasure hunt. . ." *Id.* Defendant wrote that his "financial net worth is 0 dollars and is in fact a negative number even after the Bankruptcy." *Id.* at 5. Defendant ended this tirade by writing, "[w]hy not make this disgusting abuse of authority a ménage à trois and invite the courts Honor to participate in this orgy of debauchery." *Id.* at 6. The reality of Defendant's financial situation, of course, was that he was well-heeled. Prior to obtaining his bankruptcy discharge in November 2019 (PSR ¶ 107), he vacationed in Barcelona, Spain—twice. *See* Gov't Ex. 23, Paul Archer Int'l Travel – Barcelona (July 2019); Gov't Ex. 24, Paul Archer Int'l Travel – Barcelona (Oct. 2019).

Defendant's brazen fraud on the Court caused creditors to file responses, objections, and proofs of claims. It caused the Chapter 7 Trustee to litigate Defendant's frivolous arguments. And Defendant's conduct required the Bankruptcy Judge and Bankruptcy Court personnel to devote their time and resources in response to Defendant's concealment.

## **Conclusion**

WHEREFORE, the Government provides the instant memorandum in aid of sentencing and the Court's consideration of the applicable 18 U.S.C. § 3553(a) factors. The Government reserves all other § 3553(a) arguments not addressed herein for the Sentencing Hearing. As addressed above, the Government intends to recommend a

sentence of 30 months imprisonment in this matter. The Government's sentencing exhibits have been submitted to the Court. The Government further anticipates that it will call as a sentencing witness IRS-CI Special Agent John Marini, the case agent in this matter.

Dated: November 26, 2025                                  Respectfully submitted,

                                                                              ANDREW B. BENSON
                                                                              United States Attorney

                                                                              **BY: /s/ ANDREW K. LIZOTTE**
                                                                              ANDREW K. LIZOTTE, AUSA

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 26, 2025, I electronically filed the forgoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                      Andrew B. Benson
                                      United States Attorney

                                        BY: /s/ Andrew K. Lizotte
                                       Andrew K. Lizotte
                                       Assistant United States Attorney